IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF HOUSTON COUNTY, ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
|     PLAINTIFF, | * | |
| | * | |
| VS | * | CASE NO.:    1:09cr89-MEF |
| | * | |
| CHARLA THOMAS, | * | |
|     DEFENDANT. | * | |

<u>MOTION TO SUPPRESS</u>

COMES NOW the Defendant, Charla Thomas, by and through counsel and files this Motion to Suppress and states the following grounds:

I. CONTRABAND AND OTHER EVIDENCE WAS SEIZED UNLAWFULLY/ THEREOFRE, ANY SEIZURE OF EVIDENCE AND STATEMENT MADE AGAINST THE INTREST OF THE ACCUSED SHOULD BE SUPPRESSED AS BEING THE FRUIT OF AN UNLAWFUL DENTENTION AND SEIZURE OF THE PERSON.

Both the State and the Federal constitutions assure citizens of being secure against unlawful seizures of their person. *See* U.S. Const. amend. IV & XIV; Ala. Const., Art. I § 5 (1901). Thomas was detained over two hours as part of a pretextual traffic stop for no reason other than what the officers <u>hoped</u> would be uncovered by an unrelated vehicular search. Such detention occurred despite the lack of any probable cause against Thomas, despite the absence of any warrant against Thomas, and despite the fact that Thomas was detained for several hours. Because Thomas' detention was unlawful, any evidence seized and statement obtained would also have been unlawful and thus rendered in admissible at trail.

    **A. Thomas' prolonged traffic stop constituted an unreasonable seizure of the person.**

The evidence in this case conclusively establishes that Thomas was first pulled over and detained on the basis of an improper tag on the rear of the vehicle which advertised Mike Schmitz Automotive. Officer Mike Stacey immediately checked the vehicle for proper registration and proof of insurance. Officer Stacey learned that Thomas' male companion Jason Slaughter was purchasing the vehicle and that the vehicle was properly insured. No traffic arrest or citation was issued.

However, Officer Stacey questioned Charla Thomas being Jason Slaughters companion; requested permission to search his vehicle, which was denied; and, after a delay of an hour and a half to two hours, called the K-9 Unit. Officer Stacey based his detention on Slaughter's failure to give him permission to search the vehicle and Slaughter's apparent nervousness and keeping his hands in his pockets.

It is beyond dispute that even a routine traffic stop constitutes a "seizure" that must satisfy Fourth Amendment scrutiny. *See U.S. v. Perkins,* 348 F.3d 965, 969 (11th Cir. 2003); *Stone v. City of Huntsville,* 656 So. 2d 404, 410 (Ala. Crim. App. 1994). Accordingly, it has been held that a traffic stop must be limited in scope to effectuating the initial purpose of the stop and <u>cannot last any longer than necessary to process the traffic violation leading to the stop.</u> *U.S. v. Purcell,* 236 F.3d 1274, 1277 (11th Cir. 2001). Once a traffic citation is issued for the offense, or a decision is made not to issue a citation, <u>the stop must be concluded and the individual must be released.</u> *See Knowles v. Iowa,* 525 U.S. 113, 118 (1998); *see also State v. Washington*, 623 So. 2d 392, 395 (Ala. Crim. App. 1993); Ala. Code § 32-1-4.

A traffic stop may be prolonged beyond the time necessary to process the violation <u>only</u> if (1) the officer "has probable cause to arrest the driver for some other non-traffic offense," or

(2) the officer is able to articulate "a reasonable suspicion of the driver's involvement in some other criminal activity justifying a further detention for investigatory purposes under *Terry v. Ohio.*" See *Washington,* 623 So. 2d at 395; *Peters v. State,* 859 So. 2d 451, 453 (Ala. Crim. App. 2003); *Perkins,* 348 F.2d at 970; *U.S. v. Tapia,* 912 F.2d 1364 (11th Cir. 1990). Absent such factors, it is clearly improper under the Fourth Amendment to further detain an individual merely to conduct a "fishing expedition" in search of some other criminal conduct unrelated to the stop. *U.S. v. Pruitt*, 174 F.2d 1215, 1221 (11th Cir. 1999). Therefore, once Thomas has provided all information necessary to process her alleged improper tag violation, Officer Mike Stacey was obligated to end the detention and release Thomas and Slaughter. Yet it is undisputed that Thomas was not free to leave, but was held in a *de facto* arrest even after Officer Stacey learned that Thomas was properly in possession of a fully insured vehicle.

There is no evidence in the record to suggest that the officer possessed any probable cause to detain Thomas after the initial stop. No outstanding warrant existed for Thomas' arrest, nothing had yet been seized from Highway 52 residence, and no incriminating statement had been given. Certainly, if probable cause had existed as of 3:45 p.m., Thomas would have immediately been arrested at the time of the initial traffic stop without consideration of the vehicular search and without the officer resorting to the reuse of pretexual traffic stop. There is also nothing in the record to suggest that the officers had a reasonable suspicion of criminal activity sufficient to permit a detention under *Terry v. Ohio*[1]. An officer must show that it is highly impractical to obtain a warrant in order to search a vehicle in the driveway of a house. *Coolidge v. New*

---

[1] 392 U.S. 1, 34 (1968)

*Hampshire,* 403 U.S. 443, 460-62 (1961); *Horton v. Cal,* 496 U.S. 128, 132 (1990). Thus, where a car is parked in a driveway under police surveillance, a warrant must be obtained. *Coolidge,* supra at 460-52; *Horton,* supra at 132; *Lavicky v. Burnett,* 758 F. 2d 468, 475 (10th Cir. 1985).

Only where there is reasonable suspicion may the police detain the vehicle for a brief inspection such as a K-9 sniff test. *U.S. v. Place, 462* U.S. 696, 706-10 (1983). However, such detention for a sniff test becomes unreasonable when the defendant is detained without probable cause for ninety (90) minutes and was not told how long the detention would last. *U.S. v. Pruitt,* 174, F.3d 1215 (11th Cir. 1999). The Court also held that the officers questioning following the stop was impermissible. The court indicated that the questioning following the stop "… should have been directed to securing (defendant's) license, registration and insurance papers. Once such brief questioning was completed, (defendant) and the others should have been free to go…" *U.S. v. Pruitt,* supra at 1221. A clearly pretextual stop for the purpose of searching for drugs is unconstitutional. *U.S. v. Miller,* 821 F.2d 546 (11th Cir. 1987). Neither can a defendant's refusal to consent to a search establish probable cause. *U.S. v. Taxacher,* 902 F.2d 867 (11th Cir. 1990); *U.S. v. Alexander,* 835 F. 2d 1406 (11th Cir. 1998).

To justify an investigatory detention, the government must point to specific and articulable facts that, together with rational inferences drawn from those facts, reasonably suggest that criminal activities occurred or is imminent. *Terry v. Ohio,* supra 21; *Ybarra V. Ill.,* 444 U.S. 85, 92-93 (1979). Similar investigative detention has been held unreasonable and in violation of the Fourth Amendment. See for example, *U.S. v. Golab,* 325 F.3d 63, 66 (1st Cir. 2003) (no reasonable suspicion to stop car with out-of-state licenses plates in a remote parking lot (associated with another building); *Diamondstone v.Macaluso,* 148 F.3d 113, 124 (2nd Cir. 1998) (no reasonable

suspicion to stop driver who refused to provide insurance information during two earlier traffic stops); *U.S. v. Hunt,* 253 F. 3d 227, 234 (5th Cir. 2001) (no reasonable suspicion to search because officer had general suspicion leading to practice of searching car whenever driver leaves vehicle during traffic stop); *Feathers v. AEY*, 319 F.3d 843, 849-50 (6th Cir. 2003) (no reasonable

suspicion when people detain man based only on uncorroborated anonymous tip about shirtless white male); *U.S. v. Halls,* 40 F 3d 275, 276 (8th Cir. 1996) (no reasonable suspicion to stop man who parked outside known criminal establishment, made and broke eye contact with police, kept hands in pockets, did not stop when officers requested, and had criminal record); *U.S. v. Smith,* 799 F.2d 704, 707-08 (11th Cir. 1986) (no reasonable suspicion to stop driver who failed to look at patrol car late at night, thought that act fit drug courier profile).

There is no evidence that any of the police officers had knowledge that a crime had been committed. There is no objectively reasonable basis for the police to have detained Thomas to investigate further. Mere nervousness and hands in pockets, even with knowledge that Thomas had been arrested on previous drug chargers, are not constitutionally valid reasons for such a prolonged detention.

Although the State has attempted to justify Thomas' prolonged detention and vehicular search, it is clear that Thomas could <u>not</u> have been detained consistent with her Fourth Amendment rights based only on the fact that the officers <u>hoped</u> to find contraband in the vehicle. "It is clear that 'an "inchoate and unparticularzed suspicion" or "hunch" or criminal activity' is not enough to satisfy the minimum level of objectivity required." *Perkins,* 348 F.3D at 970; *Peters,* 859 So. 2d at 455.

The type of detention that occurred in this case nonetheless violated the constitutional parameters set out in *Terry v. Ohio,* which permit only a "brief" detention for further investigatory purposes. The prolonged detention of Thomas from the time of her stop until entry of the vehicle (during which time she was admittedly not free to leave the scene) was anything but brief and spanned some two to three hours. Investigatory detentions of similar lengths have repeatedly been found to violate *Terry* and the Fourth Amendment2. Thus, Thomas' detention grossly exceeded any period that could possibly be deemed reasonable and necessary; The Alabama Supreme Court has indicated that the length of a routine traffic stop should typically be in the range of only 30 minutes. *See McPherson,* 892 So. 2d 488.

Not only was the officer's conduct in detaining Thomas unreasonable in duration, it was also wholly unrelated to the purposes for which Thomas was initially stopped. The alleged tag violation was only a <u>pretext</u> to stop and detain Thomas. The traffic violation was only a <u>false pretense</u> to hold Thomas until the K-9 sniffing unit arrived. Law enforcement cannot make a showing of any legal basis that would justify an extended traffic stop detention for such an unreasonable length of time awaiting a dog sniffing unit. Once the god was on premises and made a "hit", there were no exigent circumstances that would excuse the police from obtaining a warrant. Thomas was handcuffed and was under police detention and armed surveillance. The vehicle was well off the highway onto private property. There are no circumstances to suggest that obtaining a warrant was impractical. Accordingly, the detention and subsequent search violated our State and Federal constitutions against invalid search and seizures.

---

2  See, eg., U.S. v. Codd, 956 F.2d 1109, 111 (11th Cir. 1992) (holding that a two and a half hour detention "went far beyond the boundaries of Terry"); U.S. v. Puglisi, 723 F2d 779, 790 (11th Cir. 1984) (holding that 140 minute detention "exceeded the brief investigation detention…permissible under *Terry*"); *see also U.S. v. Williams,* 267 F. Supp. 2d 1130. 1135 (M.D. Ala. 2003) (hold that four-hour detention "far exceeded that allowed under Terry"). The United States Supreme Court has like wise indicated that <u>even a 90-minute detention would usually fall beyond the outer limits permissible under the Fourth Amendment</u>. U.S. v. Place, 462 U.S. 696, 709-10 (1983) (stating that "we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case")

**B. Thomas' subsequent arrest did not cure the taint of his unlawful detention.**

The fact that the vehicular search subsequently revealed evidence leading to Thomas' arrest is of no consequence in the legal analysis set forth above. Any evidence subsequently discovered during the search simply cannot cure the blatant violation of Thomas' Fourth Amendments rights, as it is well-settled that an improper arrest cannot be justified *nunc pro tune* by information or evidence acquired <u>after</u> the initial detention should have otherwise come to an end.

In *State v. Washington,* for example, the Alabama Court of Criminal Appeals expressly noted that "information obtained…during this [improper[further detention cannot be considered in evaluating whether the [officers] had reasonable suspicion to further detain the defendant in the first place." 623 So. 2d at 397. *See also Peters,* 859 Sio. 2d at 454. The Eleventh Circuit has also help that after-the-fact evidence cannot be used to support a formal arrest following an improper detention, <u>even if that evidence would have supported an arrest at the outset of the stop.</u>

> The fact that [the officers'] hunch ultimately turned out to be
> Correct- i.e. that Pena and Garrido were illegally transporting
> Marijuana in their van- is irrelevant for purposes for the Fourth
> Amendment. To hold otherwise would open the door to patently
> Illegal searches by government officials, who would attempt to
> Justify the legality of their conduct after-the-fact. The Fourth
> Amendment requires a showing of reasonable suspicion at the time
> the motor vehicle occupants are detained, not thereafter, once the
> results of the car van search are known. *Scott v. United States,*
> 425 U.S. 917, 923, 96 s. Ct. 1519, 47 L.Ed 2d 768 (1976)
> (Brennan, J dissenting from the denial of certiorari) ('[T]here is a
> grave danger that determinations of reasonableness will be dictated
> by hindsight evaluation uncovered by [searches]…')

Pruitt, 174 F.3d at 1221; Perkins, 348 F.3d at 971.

In the present case, Thomas was subjected to a *de facto* arrest at the moment that his traffic stop could have been (and should have been) completed. It is more that obvious from the record that the detaining officers, having found nothing illegal, could not permissibly hold Thomas for the next two hours merely on the "hunch"" that the vehicular search would uncover incriminating evidence. The fact that evidence was subsequently discovered in the vehicle does not absolve the complete lack of probable cause/reasonable suspicion that existed <u>at the time of Thomas' traffic stop,</u> and such reasoning is nothing more than a hindsight attempt to justify the officers' misconduct. The reality is that Thomas initial detention was unconstitutional and, consequently, tainted both his subsequent formal arrest and all fruits thereof.

### B. Thomas' purported confession was the direct result and fruit of this unlawful detention and arrest.

Because the statement purportedly given by Thomas would have been the direct fruit of his illegal detention, it must be suppressed. In *Wong Sun v. United States,* 371 U.S. 471, 485-86 (1963), the United States Supreme Court ruled that verbal evidence, confessions, and other admissions (like all other derivative evidence) <u>should be excluded if obtained through an unlawful seizure of the person.</u> Likewise, in *Brown v. Illinois,* 422 U.S. 590, 601 (1975), THE Court again noted that a statement of confession should be excluded under such circumstances, observing that "the Fifth Amendment is 'in intimate relation' with the Fourth." Thus, a confession/statement made by one illegally in custody <u>must be suppressed</u> in order to effectuate the dual purposes behind the Fourth and Fifth Amendments, as well as Article I,§§ 5 and 6   or the Constitution of Alabama.

Moreover, even though Thomas had been *Mirandized*, such fact alone is insufficient to purge the statement of the taint that was created by Thomas' unconstitutional detention.

1144278. doc

In *Brown v. Illinois,* the United States Supreme Court expressly warned that *Miranda* should not be viewed as a cure-all for statements improperly obtained though violations of the Fourth Amendment.

> If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. *See Davis v. Mississippi,* 394 U.S. 721, 726-27, 89 S. Ct. 1394, 1397, 22 L. Ed.2d 676 (1969). Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived there from could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.' *See Mapp. v. Ohio,* 367 U.S., AT 648, 81 S. Ct. at 1687

422 U.S. at 603.3

Applying the rule of *Wong Sun* and its progeny, it is clear that the fruits of an illegal arrest/detention should be suppressed when they have a sufficiently close nexus to the underlying constitutional violation. In this case, the verbal statement allegedly give by Thomas was directly tainted by her improper detention and arrest. It is more than obvious that any such statement, which was allegedly given shortly after Thomas's arrest, would have resulted from a constitutional violation and not due to some intervening act, as there were absolutely no attenuating events in this case sufficient to sure the taint of Thomas' unlawful detention.

---

3 The United States Supreme Court's subsequent decision in Taylor v. Alabama, 457 U.S. 687, 6990 (1982) further elaborated on the *Wong Sun/Brown* reasoning in concluding that a confession should be suppressed when obtained as a result of an unlawful custodial detention or arrest. ('If *Miranda* warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere 'form of words.'")

## CONCLUSION

Because the law has long been settled that improperly obtained evidence should be excluded, the motion is also due to be suppressed as to any statement, confession or admission against interest made by Thomas after the vehicular search was conducted.

Respectfully submitted this the 17th day of July, 2009.

/s/ Warren Rowe

Warren Rowe (ROW005)
Attorney for Defendant
P. O. Box 311305
Enterprise, Alabama 36331
(334) 347-3401

/s/ Warren Rowe
Warren Rowe (ROW005)
Attorney for Defendant
P. O. Box 311305
Enterprise, Alabama 36331
(334) 347-3401

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing motion upon the Honorable Clark Morris, U.S. Attorney, by placing same in the U.S. Mail, postage prepaid this the 17th day of July, 2009.

/s/ Warren Rowe
Warren Rowe (ROW005)